**PACIFIC RIVERS COUNCIL; Oregon Natural Resources Council; Hells Canyon Preservation Council; The Wilderness Society; Oregon Natural Desert Association, Plaintiffs–Appellants–Cross–Appellees,**

v.

**Jack Ward THOMAS, in his official capacity as Chief of the U.S. Forest Service; United States Forest Service, Defendants–Appellees–Cross–Appellants,**

and

**Northwest Forest Resource Council, et al., Defendants–Intervenors/Appellees.**

Nos. 93–36162, 94–35042.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1994.

Decided July 7, 1994.

---

Victor M. Sher, Todd D. True, Adam J. Berger, Kristen L. Boyles, Sierra Club Legal Defense Fund, for plaintiffs/cross-appellees.

Lois J. Schiffer, Acting Asst. Atty. Gen., Jack C. Wong, U.S. Atty., Thomas C. Lee, Asst. U.S. Atty., Peter R. Steenland, Jr., Albert M. Ferlo, Jr., Elinor Colborn, J. Carol Williams, U.S. Dept. of Justice, Environmental & Natural Resources Div., for appellees/cross appellants.

Mark C. Rutznick, Douglas C. Blomgren, Preston Thorgrimson Shidler Gates & Ellis, for defendants-intervenors/appellees.

Before: WRIGHT, TANG and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

## OVERVIEW

Plaintiffs-appellants Pacific Rivers Council, *et al.* (PRC) appeal the district court's grant of a partial injunction. This injunction bars the United States Forest Service (Forest Service) from announcing, awarding or conducting any additional timber sales, range activities, or road building projects in the Wallowa–Whitman and Umatilla National Forests until it commences consultation procedures as required by the Endangered Species Act § 7(a)(2), 16 U.S.C. § 1536(a)(2) (ESA). The basis for the injunction was that the Forest Service had failed to consult with the National Marine Fisheries Service (NMFS) regarding the effects of certain Land and Resource Management Plans (LRMPs) on the Snake River chinook salmon, a species recently listed as "threatened" under the ESA. PRC argued that the district court should enjoin ongoing or announced timber, range, and road projects that the Forest Service had determined were not likely to affect the chinook. The district court accepted the Forest Service's determination that these projects were not irreversible or irretrievable commitments of resources in violation of ESA § 7(d), 16 U.S.C. § 1536(d).

The Forest Service also appeals the district court's order. It argues that because the LRMPs were adopted before the chinook were listed as a "threatened" species, the LRMPs are not agency actions requiring consultation under § 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2). It also argues that even if the LRMPs are deemed agency actions, the Forest Service has already begun informal consideration of potential amendments to the LRMPs to address the listed chinook, making reinitiation of consultation superfluous.

We affirm the district court's judgment granting an injunction against the Forest Service pending compliance with the ESA. The LRMPs are important programmatic documents that set out guidelines for resource management in the forests involved in this case. As such, the LRMPs constitute continuing agency action requiring consulta-

tion under § 7(a)(2) of the ESA. We reverse, however, the district court's judgment denying an injunction against all ongoing and announced timber, range, and road projects. The district court erred in interpreting § 7(d) of the ESA to allow the ongoing activities to continue when the Forest Service had failed to enter into consultation as required by § 7(a)(2) of that statute. Accordingly, we remand to the district court with instructions to reconsider whether the ongoing and announced timber, range and road projects are irreversible and irretrievable commitments of resources which must be enjoined during consultation on the LRMPs between the Forest Service and NMFS.

## FACTS

In 1990, the Forest Service promulgated and approved both the Wallowa–Whitman and the Umatilla Forest LRMPs.[1] These LRMPs establish forest-wide and area-specific standards and guidelines to which all projects must adhere for up to 15 years. The LRMPs identify lands suitable for timber production and other uses, and establish an allowable sale quantity of timber and production targets and schedules for forage, road construction, and other economic commodities. The LRMPs also seek to provide adequate fish and wildlife habitat to maintain viable populations of existing native species, and "include measures for preventing the destruction or adverse modification of critical habitat for threatened and endangered species." 36 C.F.R. § 219.1(a); 219.27(6) & (8). Every resource plan, permit, contract, or any other document pertaining to the use of the forest must be consistent with the LRMP. 16 U.S.C. § 1604(i).

Anticipating the listing of the Snake River chinook salmon as a threatened species, the Forest Service and the NMFS entered into an "Inter-agency Agreement for Fulfilling Section 7 Interagency Coordination Responsibilities under the Endangered Species Act, Snake River Basin Salmonid Habitats." They agreed to cooperate in developing and implementing conservation strategies for the listed salmon and to consider amending LRMPs that were inconsistent with these strategies. In addition, the Forest Service agreed to conduct a biological evaluation of all proposed and ongoing activities in the Wallowa–Whitman and Umatilla Forests.

On April 22, 1992, the NMFS listed the Snake River chinook as a threatened species. *See* 57 Fed.Reg. 14,653. After the salmon were listed, 755 ongoing projects for the Umatilla Forest and 2,806 for the Wallowa–Whitman Forest were subjected to a biological evaluation to determine whether particular activities might affect the salmon.[2] Over 700 projects were found "likely to adversely affect" the salmon. All of these were suspended pending completion of formal consultation with the NMFS.[3] Just under 1,200 of the projects were found not to affect the salmon. Another 1,700 projects were found "not likely to adversely affect" the salmon. All of the "not likely to adversely affect" projects were submitted to the NMFS for informal consultation by the end of August 1992.[4] However, the Forest Service decided to allow on-going projects to continue during the duration of the informal consultation where it previously determined that the pro-

---

1. The Wallowa–Whitman LRMP was approved on April 23, 1990 and the Umatilla LRMP was approved on June 11, 1990.

2. The evaluation process is summarized as follows:

    When the [Forest Service] biologist completes the biological evaluation process, a determination is made of "no effect" or "may effect" on the listed species. If a "may effect" determination is made, the biologist then makes an additional determination of "beneficial affect [sic]," "not likely to adversely affect" (NLAA), or "likely to adversely affect" (LAA). All "may effect" determinations trigger the Section 7 consultation requirement of the ESA.

3. Thirty of these actions were eventually downgraded to "not likely to adversely affect" because of modifications. These actions were not suspended.

4. However, in January 1993, the Forest Service and the NMFS agreed in a "Standardized Outline for On-Going and Proposed Projects—Section 7 Consultation" to submit all actions for formal consultation. The change from informal to formal consultation did not change the initial determinations made in the biological evaluations.

ject was not likely to adversely affect the salmon. It determined that projects it deems are "not likely to adversely affect" a species will not constitute "irreversible or irretrievable commitments of resources and can be continued."

On August 5, PRC sent the Forest Service a 60–day notice of intent to sue under the ESA, citing the agency's failure to consult with the NMFS on the effects on the Snake River chinook of the Umatilla and Wallowa–Whitman National Forest LRMPs. On October 26, 1992, PRC filed suit in federal district court in Oregon alleging that the Forest Service violated the ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2). PRC moved for partial summary judgment, seeking a declaration that the Forest Service is violating ESA § 7(a)(2) and an order compelling the Forest Service to initiate consultation with NMFS on the Umatilla and Wallowa–Whitman LRMPs.[5] In addition, PRC moved for a preliminary or permanent injunction, requesting that the district court enjoin all ongoing and future activities in the two national forests that may affect the threatened chinook until the Forest Service completes consultation on the LRMPs.[6]

The district court granted PRC's motion for summary judgment and ordered the Forest Service to perform a biological assessment of the LRMPs and consult with NMFS as required by the ESA. The court also enjoined the Forest Service "from announcing, awarding or conducting any additional timber sales, range activities/grazing permits, or road building projects pending compliance with ESA § 7." The injunction covered all future activities that "fall within the definition of a § 7(d) [16 U.S.C. § 1536(d)] [as an] irreversible or irretrievable commitment of a resource during the consultation period."

However, the court refused to enjoin any of the ongoing or announced timber, range, and road projects under the LRMPs because

it found that PRC had not adequately contested the Forest Service's determination that these activities were not irreversible or irretrievable commitments of resources under § 7(d). The district court denied PRC's motion for reconsideration of the scope of the injunction or for an injunction pending appeal. These appeals followed.

## I

■ The Forest Service first argues that the district court erred in concluding that the LRMPs are agency actions under § 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2).[7] Specifically, the Forest Service argues that the LRMPs are not ongoing agency action throughout their duration, but only when they were adopted in 1990 or if they are revised or amended in the future. The Forest Service maintains that the district court erred in determining that the LRMPs represent ongoing agency action throughout their duration.

This argument is incorrect. The LRMPs are comprehensive management plans governing a multitude of individual projects. Indeed, every individual project planned in both national forests involved in this case is implemented according to the LRMPs. Thus, because the LRMPs have an ongoing and long-lasting effect even after adoption, we hold that the LRMPs represent ongoing agency action. We affirm the district court's decision requiring the Forest Service to consult with the NMFS as required under the ESA, 16 U.S.C. § 1536(a)(2).

The Forest Service contends that the courts should defer to its administration of an ambiguous statute. It argues that the LRMPs in this case are not agency action and that its interpretation of the ESA is reasonable. It cites *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) for this very proposition. In *Udall,* the Court stated: "When faced with a problem of

---

5. The Forest Service also filed a cross-motion for summary judgment.

6. After PRC submitted a list of the activities it sought to enjoin, the Forest Service admitted that it had already completed twenty of the identified timber sales and ten of the identified road pro-

jects. These projects were undertaken without consultation with the NMFS.

7. Although the Forest Service sought to dismiss PRC's complaint on mootness and standing grounds, it does not challenge on appeal the district court's resolution of these issues.

statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Id.* at 16, 85 S.Ct. at 801.

However, *Udall* does not mandate deference here. In *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 447–48, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987), the Court made it plain that

> [t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

(quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, n. 9 [104 S.Ct. 2778, 2782, n. 9, 81 L.Ed.2d 694] (1984)). *Accord Central Montana Elec. Power Coop. v. Administrator of Bonneville Power Admin.,* 840 F.2d 1472, 1477 (9th Cir.1988).

■ Thus, when Congress's intent is clear, the courts, not the agency, are charged with the basic responsibility for statutory interpretation. A contrary agency interpretation is entitled to no deference. And as the Supreme Court emphasized in *TVA v. Hill,* 437 U.S. 153, 173, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978), "one would be hard pressed to find a statutory provision whose terms were any plainer than those in § 7 of the [ESA]."

The ESA's plain language affirmatively commands all federal agencies to "insure that *any action* authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species...." 16 U.S.C. § 1536(a)(2) (emphasis added).[8] "This language admits of no exception." *TVA,* 437 U.S. at 173, 98 S.Ct. at 2291.[9] The regulations defining agency action also admit of no limitations:

> *Action* means *all* activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas. Examples include, *but are not limited to:*
>
> (a) actions intended to conserve listed species or their habitat;
>
> (b) the promulgation of regulations;
>
> (c) the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid; or
>
> (d) actions directly or indirectly causing modifications to the land, water, or air.

50 C.F.R. § 402.02 (emphasis added).

In short, there is little doubt that Congress intended to enact a broad definition of agency action in the ESA, and therefore that the LRMPs are continuing agency action. Indeed, the Supreme Court has interpreted the plain meaning of agency action broadly, in conformance with Congress's clear intent, in

---

8. In order to ensure compliance with the Act, the ESA and its implementing regulations require federal agencies ("action agencies") to consult with the appropriate federal fish and wildlife agency—NMFS, in this case—whenever their actions "may affect" an endangered or threatened species. *See* 50 C.F.R. § 402.14(a). Thus, if the agency determines that a particular action will have no effect on an endangered or threatened species, the consultation requirements are not triggered.

If the action agency subsequently determines that its action is "likely to adversely affect" a protected species, it must engage in formal consultation. *Id.* Formal consultation requires that the consulting agency—again, NMFS—issue a biological opinion determining whether the action is likely to jeopardize the listed species and describing, if necessary, reasonable and prudent alternatives that will avoid a likelihood of jeopardy. *See* 16 U.S.C. § 1535(b)(3)(A).

But if the action agency determines that an action is "not likely to adversely affect" the species, it may attempt informal consultation. *See* 50 C.F.R. § 402.13(a). This does not end the consultation process. The consulting agency must issue a written concurrence in the determination or may suggest modifications that the action agency could take to avoid the likelihood of adverse effects to the listed species. *See* 50 C.F.R. § 402.13(b). If no such concurrence is reached, the regulations require that formal consultation be undertaken. *See* 50 C.F.R. § 402.14.

9. Subsequent to the *TVA* decision, Congress amended the ESA to allow exceptions to the requirements of § 7(a)(2) in extraordinary circumstances, none of which apply here. *See* 16 U.S.C. § 1536(h).

a case that presents striking similarities to this case. In *TVA v. Hill,* the Court rejected the Tennessee Valley Authority's contention that the ESA did not apply to a federal project (a $102 million dollar dam) that was well under way when Congress passed the ESA in 1973. *TVA,* 437 U.S. at 173, 98 S.Ct. at 2291. The Court noted that "[t]o sustain [this] position ... we would be forced to ignore the ordinary meaning of [the] plain language [in § 7(a)(2) ]." *Id.* Although the dam had been planned and approved years before the passage of the ESA, the Court found that TVA's operation of the dam constituted agency action, and it enjoined the dam's operation.[10] *Id.* The Court recognized that its reading of the ESA would produce results requiring the sacrifice of many millions of dollars in public funds. But it asserted that "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as 'institutionalized caution.'" *Id.* at 194, 98 S.Ct. at 2302.

In this action, the Forest Service makes essentially the same argument—that the ESA does not apply to programs or activities undertaken before the listing of a species. It argues that it is not required to reinitiate consultation because the LRMPs are not continuing agency actions, but are agency actions only at the time they are adopted, revised, or amended. It further maintains that the existence of the LRMPs by themselves are not agency actions. Rather, only the specific activities authorized by the LRMPs are agency actions within the meaning of the ESA. The LRMPs themselves, the Service argues, do not mandate any action and are "merely" programmatic documents.

However, the Forest Service can cite no precedent of this or any other court which lends support to such a reading of the statute. And as shown above, *TVA* weighs heavily against the Forest Service on this point, as is evident from the *TVA* Court's observation that "Congress foresaw that § 7 would, on occasion, require agencies to alter ongoing projects in order to fulfill the goals of the Act." *Id.* at 186, 98 S.Ct. at 2298.

Following the Supreme Court's lead in *TVA,* we have also construed "agency action" broadly. *See Lane County Audubon Soc'y v. Jamison,* 958 F.2d 290, 294 (9th Cir.1992); *Conner v. Burford,* 848 F.2d 1441, 1452 (9th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). More importantly, we have recognized that forest management plans have ongoing effects extending beyond their mere approval. In *Lane County,* we found that a forest management plan implemented without consultation violated the ESA. Although the management plan in that case was implemented *after* the listing of the threatened species, our reasoning is relevant. We stated that the "[forest management plan] is action that 'may affect' the spotted owl, since it sets forth criteria for harvesting owl habitat." *Lane County,* 958 F.2d at 294. Thus, we implicitly recognized that forest management plans can be actions even after their implementation.

Similarly, the LRMPs are actions that "may affect" the protected salmon because the plans set forth criteria for harvesting resources within the salmon's habitat. Among its zoning decisions, the Wallowa–Whitman LRMP allocates approximately 60,-000 acres to the "management area" that surrounds the spawning grounds of the Snake River chinook. This allocation, established *before* the Snake River chinook were listed as threatened, sets guidelines for logging, grazing and road-building activities within its boundaries. Furthermore, the plans establish the allowable sale quantity of timber as well as production targets and schedules for forage, road construction, and other economic commodities.[11]

---

**10.** It was accepted by both parties in *TVA* that the dam's proposed operation would have eradicated the snail darter, an endangered species.

**11.** The Wallowa–Whitman LRMP includes a "Ten–Year Timber Sale Action Plan" that outlines "how the timber outputs ... are likely to be provided during the first ten years of plan implementation" and a more detailed five-year plan that displays each sale's name, location, volume, and road requirements.

Perhaps most telling, the Forest Service and the NMFS are amending the LRMPs, admitting that they are inadequate because they do not address the newly listed species.[12] These amendments belie the Forest Service's claim that the LRMPs do not constitute continuing agency action. They expressly acknowledge the need to revisit the LRMPs in light of the salmon's listing as a threatened species.

Given the importance of the LRMPs in establishing resource and land use policies for the forests in question there is little doubt that they are continuing agency action under § 7(a)(2) of the ESA. The fact that the Forest Service adopted these LRMPs before the listing of the Snake River chinook is, therefore, irrelevant. We affirm the district court's order requiring the Forest Service to reinitiate consultation under § 7(a)(2).

## II

■ The district court accepted the Forest Service's conclusion that ongoing and announced timber, range, and road projects that may affect the Snake River chinook were not irreversible or irretrievable commitments of resources under § 7(d) of the ESA. 16 U.S.C. § 1536(d). It refused to enjoin these activities while the Forest Service consulted with NMFS on the individual projects in the LRMPs. However, the district court erred in applying § 7(d) to the instant case. As the ESA's plain language makes clear, § 7(d) applies only after an agency has initiated consultation under § 7(a)(2).[13] As de-

tailed above, the Forest Service has, as yet, failed to enter into consultation on the *LRMPs themselves,* despite the fact that the LRMPs constitute continuing agency action under § 7(a)(2). Accordingly, we reverse the district court's judgment denying an injunction barring ongoing and announced projects that may affect the Snake River chinook.

We have previously made it clear that § 7(d) does not serve as a basis for *any* governmental action unless and until consultation has been initiated. In *Conner,* we found that the Fish and Wildlife Service had violated the ESA by failing to consider the consequences of all stages of oil and gas leases on certain threatened or endangered species in its biological opinion: *Conner,* 848 F.2d at 1455 n. 34. We rejected the Fish and Wildlife Service's suggestion that projects it unilaterally determined were not irreversible and irretrievable commitments of resources could go forward even though it had not obtained an adequate biological opinion as required by § 7(a)(2). *Id.*[14]

The Forest Service has not reinitiated consultation as required under § 7(a)(2). Thus, its determination that the timber, road, and range projects are not irreversible or irretrievable commitments of resources is of no moment. Section 7(a)(2) mandates that the Forest Service enter into consultation on the LRMPs. Its conclusion that these activities "may affect" the protected salmon is sufficient reason to enjoin these projects. Only after the Forest Service complies with § 7(a)(2) can any activity that may affect the

---

12. The Forest Service claims that reinitiation of consultation would be superfluous and unnecessary because it is in consultation regarding the proposed amendments currently under consideration. However, consultation on the entirety of both LRMPs is required, not just an amendment to the LRMPs. *Cf. Conner v. Burford,* 848 F.2d at 1453 (9th Cir.1988) ("[T]he ESA requires the [agency's] biological opinion to analyze the effect of the *entire* agency action.") Requiring the Forest Service to reinitiate consultation is not superfluous.

13. Section 7(d) states:
*After initiation of consultation required under [§ 7(a)(2)],* the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action

which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate [§ 7(a)(2)].
16 U.S.C. § 1536(d) (emphasis added).

14. In *Conner,* we stated that

Section 7(d) does not amend section 7(a) to read that a biological opinion is not required before the initiation of agency action so long as there is no irreversible or irretrievable commitment of resources.... Rather, section 7(d) clarifies the requirements of Section 7(a), ensuring that the status quo will be maintained during the consultation process. Section 7(d) is not an independent authorization for "incremental step consultation."
*Conner,* 848 F.2d at 1455 n. 4.

protected salmon go forward.[15] Accordingly, we reverse the district court's denial of an injunction barring all ongoing and announced activities that may affect the Snake River chinook from going forward. The Forest Service cannot go forward with these activities without first complying with the consultation requirements of the ESA.

Because § 7(d) could not serve as the basis for permitting *any* agency action at the time of the hearing, we need not address the district court's rulings on whether the various commitments of resources were irreversible and irretrievable. If the Forest Service initiates consultation on the LRMPs, the court must decide if the ongoing or announced activities can proceed during the consultation period. It may find guidance in *Lane County,* where we held that the Bureau of Land Management could not go forward with any new sales of timber until consultation on a forest management plan and its effect on the threatened species was completed. Most importantly, we held that timber sales constitute *per se* irreversible and irretrievable commitments of resources under § 7(d) and thus could not go forward during the consultation period. *Lane County,* 958 F.2d at 295.[16]

### CONCLUSION

We AFFIRM the district court's judgment granting an injunction against the Forest Service pending compliance with the ESA and hold that the Land and Resource Management Plans constitute continuing agency action requiring consultation under § 7(a)(2) of the ESA. We REVERSE the district court's judgment excluding from the injunction ongoing and announced timber, range, and road projects. The district court erred in relying on § 7(d) of the ESA at a time when the Forest Service had failed to enter into consultation as required by § 7(a)(2) of that statute. We REMAND to the district court to modify its injunction to include the ongoing and announced timber, range and road projects. This shall not preclude the district court from considering further modifications to its injunction, in accordance with our opinion, if and when consultation is reinitiated.

AFFIRMED in part, REVERSED in part, and REMANDED.

15. Of course, the activity cannot go forward even after consultation is initiated if it represents an irreversible and irretrievable commitment of resources as prohibited by § 7(d).

16. *See also Commonwealth of Mass. v. Andrus,* 481 F.Supp. 685, 691 (D.Mass.1979) (drilling an irretrievable or irreversible commitment) (citing *Nebraska v. Rural Electrification Admin.,* 12 ERC 1156, 1172, 1978 WL 23470 (construction an irretrievable or irreversible commitment)), *aff'd*

*sub nom. Conservation Law Found. of New England, Inc. v. Andrus,* 623 F.2d 712 (1st Cir.1979).

