PACIFIC RIVERS COUNCIL, and the
Wilderness Society, Plaintiffs,

v.

Jack Ward THOMAS, in his official capacity as Chief of the United States Forest Service; and United States Forest Service, Defendants.

and

Intermountain Forest Industry Association; Shearer Lumber Products; Boise Cascade Company; Associated Logging Contractors; Hecla Mining Company; Meridian Gold Company; and Thompson Creek Mining Company, Defendants–Intervenors.

Civ. No. 94–0159–S–DAE.

United States District Court,
D. Idaho.

Jan. 12, 1995.

Todd D. True, Adam J. Berger, Kristen L. Boyles, Sierra Club Legal Defense Fund, Inc., Seattle, WA, Laird J. Lucas, Land & Water Fund of the Rockies, Boise, ID, for Pacific Rivers Council.

Albert P. Barker, Hawley Troxell Ennis & Hawley, Boise, ID, Elizabeth H. Temkin, Scott W. Hardt, Ballard Spahr Andrews & Ingersoll, Denver, CO, for Hecla Min. Co.

B. Newal Squyres, Brian J. King, Murray D. Feldman, Holland & Hart, Boise, ID, Laurie L. Korneffel, Dean R. Massey, Parcel Mauro Hultin & Spaanstra, Denver, CO, Michael J. Brennan, C. William Groscup, Holland & Hart, Washington, DC, for Meridian Gold Co.

Scott L. Campbell, Elam & Burke, Boise, ID, Laurie L. Korneffel, Dean R. Massey, Parcel Mauro Hultin & Spaanstra, Denver, CO, for Thompson Creek Min. Co.

D. Marc Haws, Asst. U.S. Atty., Boise, ID, for Jack Ward Thomas.

## ORDER GRANTING INJUNCTIVE RELIEF AND DENYING SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

### I. INTRODUCTION

*A. Procedural History.*

Plaintiff conservation organizations filed their Complaint for Declaratory Judgment and Injunctive Relief against Jack Ward Thomas, Chief of the United States Forest Service, and the United States Forest Service (collectively "USFS") on April 12, 1994. In their first claim for relief, plaintiffs chal-

lenge the failure of the USFS to consult with the National Marine Fisheries Service ("NMFS") under § 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), on the effects of the Land and Resource Management Plans ("LRMPs") for the Boise, Challis, Nez Perce, Payette, Salmon, and Sawtooth National Forests in the State of Idaho on endangered Snake River sockeye salmon and Snake River spring/summer and fall chinook salmon.

In their second claim for relief, plaintiffs challenge the failure of the USFS to consult with NMFS under § 7(a)(2) regarding effects on protected salmon of individual timber, grazing, mining, and road building projects implemented or being implemented by the LRMPs at issue. In their third claim for relief, plaintiffs allege that the USFS is in violation of § 7(d) of the ESA, 16 U.S.C. § 1536(d), by carrying out and allowing timber, range, mining, and road projects to continue that may adversely affect the endangered salmon prior to completing consultation with NMFS on both the individual projects and the LRMPs.

In their fourth and final claim for relief, plaintiffs allege that the USFS is in violation of § 9 of the ESA, 16 U.S.C. § 1538, and its implementing regulations, 50 C.F.R. §§ 222.21 and 227.21, by carrying out and allowing timber, range, mining, and road projects to continue on the national forests that will incidentally take endangered species of salmon, without obtaining an "incidental take" statement from NMFS. The court notes that, in connection with each claim for relief under the ESA, plaintiffs have also alleged a concomitant violation of the Administrative Procedures Act ("APA"), specifically 5 U.S.C. § 706.

When this case was filed, it was initially assigned to Senior United States District Judge Harold L. Ryan. In its early stages, Judge Ryan allowed certain interested parties to intervene. The intervenors have been grouped as follows. The "Mining Group"

consists of Hecla Mining Company, Meridian Gold Company, and Thompson Creek Mining Company. The "Timber Group" consists of Intermountain Forest Industry Association, Shearer Lumber Products, Boise Cascade Company, and Associated Logging Contractors. All of these entities were granted permissive intervention only, subject to certain terms and conditions.[1]

On August 19, 1994, plaintiffs filed a motion for preliminary injunction, and on September 13, 1994, the USFS filed a motion for partial summary judgment. After certain extensions of time and other accommodations allowed by the court, these motions were fully briefed and submitted on October 11, 1994. Then on November 2, 1994, the case was reassigned to this court for all further proceedings.[2]

On December 6, 1994, the court held a hearing on plaintiffs' motion for preliminary injunction and the USFS's motion for partial summary judgment. Accordingly, these motions are now ripe for decision. Briefly, the facts of the case are as follows.

### B. Facts of the Case.

The Forest and Rangeland Renewable Resources Planning Act of 1974, as amended by the National Forest Management Act of 1976, 16 U.S.C. §§ 1600–1614, requires the USFS to prepare Land and Resource Management Plans or LRMPs for individual units of the national forest system. The LRMPs at issue in this case and the dates of their adoption are as follows: (1) Boise National Forest LRMP—April 27, 1990; (2) Challis National Forest LRMP—June 3, 1987; (3) Nez Perce National Forest LRMP—October 8, 1987; (4) Payette National Forest LRMP—May 6, 1988; (5) Salmon National Forest LRMP—January 11, 1988; and (6) Sawtooth National Forest LRMP—September 6, 1987.

LRMPs are broad program frameworks which establish basic guidelines for USFS's

---

**1.** See Order Granting Intervention, filed August 22, 1994; Order Granting Motions to Intervene, filed September 15, 1994; Order Granting Motions for Extension of Time and To Intervene, filed September 27, 1994; and Order Governing Participation of Intervenors, filed October 28, 1994.

**2.** See Order of Reassignment, entered November 2, 1994.

management of a national forest for up to fifteen years at a time. They set forth the essential planning elements and standards which will govern future site-specific decisions. *See* 16 U.S.C. § 1604.

The Snake River sockeye salmon were listed by NMFS as an endangered species protected by the ESA on November 21, 1991. *See* 56 Fed.Reg. 58619 (1991). NMFS listed the spring/summer and fall chinook salmon as threatened on April 22, 1992. *See* 57 Fed.Reg. 14654 (1992). Then on August 18, 1994, NMFS took emergency action and listed the spring/summer and fall chinook salmon as endangered species. *See* 59 Fed.Reg. 42529 (1994). The listing announcements cited the destruction of spawning habitat by logging, grazing, mining, road building and other land disturbing activities as a significant factor in the decline of the species.

The LRMPs at issue in this action establish the management standards and guidelines for all activities on the national forests. The LRMPs provide the basis for implementation of all specific projects on vast expanses of public lands, and these lands encompass water drainages which are critical to the survival of these endangered species of salmon. Nevertheless, when the salmon were listed as endangered and threatened, the USFS did not reinitiate consultation on the LRMPs as required under § 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2).

The same circumstances arose with respect to LRMPs for two national forests in Oregon, the Wallowa–Whitman and the Umatilla National Forests. Despite the listing of the salmon, the USFS also did not reinitiate consultation with NMFS on these LRMPs. Consequently, these same plaintiff conservation organizations, with others, filed suit against the USFS in the District of Oregon. That suit culminated in a specific pronouncement by the Ninth Circuit Court of Appeals that the USFS must reinitiate consultation with NMFS on the LRMPs. *See Pacific Rivers Council v. Thomas,* 30 F.3d 1050, 1053–56 (9th Cir.1994). This directive from the Ninth Circuit prompted the USFS to reinitiate consultation with NMFS on the LRMPs at issue in this case on September 9, 1994.

## II. ANALYSIS

### A. The Preliminary Injunction Standard.

■ It is well established that the district court generally has broad discretion in deciding whether or not to issue a preliminary injunction. Appellate review is limited to ensuring that the district court did not abuse its discretion and/or base its decision on an erroneous legal standard or clearly erroneous finding of fact. *See Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir.1985); *Sierra Club v. Marsh,* 816 F.2d 1376, 1381–81 (9th Cir. 1987). The *Marsh* case is particularly instructive here, because in that case the Ninth Circuit addressed preliminary injunctions in the context of the ESA.

In *Marsh,* the court first laid out the traditional requirements for a preliminary injunction. These requirements are "(1) a likelihood of success on the merits and the possibility of irreparable injury or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party seeking relief." *Sierra Club v. Marsh,* 816 F.2d at 1382. The court then declared:

> This is *not* the test for injunctions under the Endangered Species Act. In *TVA v. Hill,* 437 U.S. 153, 173, 193–95, 98 S.Ct. 2279, 2291, 2301–02, 57 L.Ed.2d 117 (1978), the Supreme Court held that Congress had explicitly foreclosed the exercise of traditional equitable discretion by courts faced with a violation of section 7 of the ESA.... Congress considered and rejected language that would have permitted an agency to weigh the preservation of species against the agency's primary mission.... In Congress's view, projects that jeopardized the continued existence of endangered species threatened incalculable harm: accordingly, it decided that *the balance of hardships and the public interest tip heavily in favor of endangered species....* We may not use equity's scales to strike a different balance.

*Id.* at 1383 (emphasis added) (citations omitted).

It is worth noting the specific language of § 7 which provides as follows:

Each Federal agency shall ... insure that any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined ... to be critical....

16 U.S.C.S. § 1536(a)(2) (Law.Co-op.1984). In interpreting this provision, the Supreme Court has declared that "[o]ne would be hard pressed to find a statutory provision whose terms were any plainer than those in § 7 of the Endangered Species Act ... This language admits of no exception." *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 173, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978). The Supreme Court has affirmed this view of § 7 in subsequent cases. *See, for example, Weinberger v. Romero–Barcelo,* 456 U.S. 305, 313–14, 102 S.Ct. 1798, 1803–04, 72 L.Ed.2d 91 (1982); *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 543 n. 9, 107 S.Ct. 1396, 1403 n. 9, 94 L.Ed.2d 542 (1987).

*B. The Summary Judgment Standard.*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,*

477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.[3]

▪ Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be *both* "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (*quoting First Nat'l Bank v. Cities Serv. Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. *See e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

*C. Application of the Legal Standards.*

*1. USFS's Motion for Partial Summary Judgment.*

▪ The USFS has moved for summary judgment on plaintiffs' first claim for relief.

---

**3.** *See also* Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
Fed.R.Civ.P. 56(e).

The USFS contends that because it has reinitiated consultation with NMFS, plaintiffs' first claim for relief is now moot. The court is not persuaded by this contention. At the time this case was filed, the USFS took the position that it was not required to reinitiate consultation with NMFS on the LRMPs. The USFS has now reversed itself on this point, not because it has had a change of heart, but because the Ninth Circuit Court of Appeals has in effect ordered it to do so. *See Pacific Rivers Council v. Thomas,* 30 F.3d 1050, 1053–56 (9th Cir.1994).

Under the circumstances, the court agrees that plaintiffs' first claim for relief is appropriate for summary disposition. However, rather than granting partial summary judgment in favor of the USFS, the court finds that plaintiffs are entitled to a pronouncement from the court that the USFS must reinitiate consultation with NMFS on the six LRMPs at issue in this case.

■ The USFS further contends that plaintiffs' request for a preliminary injunction is moot. However, the recent decision by the Ninth Circuit in *Pacific Rivers* clearly shows that plaintiffs' request for injunctive relief, both preliminary and permanent, is not moot. Accordingly, USFS's motion for partial summary judgment will be denied.

### 2. Plaintiffs' Motion for Preliminary Injunction.

■ In their motion filed August 19, 1994, plaintiffs ask the court to preliminarily enjoin all ongoing, announced, and proposed logging, grazing, mining, and road building activities authorized, funded, or carried out by the USFS in the six national forests that "may affect" the endangered species of salmon, except those activities that will benefit the salmon. Plaintiffs also ask the court to preliminarily enjoin all activities which the USFS has previously determined are "not likely to adversely affect" the endangered salmon, and those activities that have been designated as "likely to adversely affect" the salmon.

When plaintiffs first filed their motion, they asked that a preliminary injunction be entered until the court ruled on the question of whether the USFS is required to consult with NMFS on the LRMPs. With that issue now resolved in their favor, plaintiffs ask that an injunction be imposed until the USFS has *completed* formal consultation with NMFS.

The USFS contends that when it reinitiated consultation with NMFS, all grounds for preliminary injunctive relief were eliminated and any harmful effects of prior wrongdoing were eradicated. At this point, a careful review of the case originating in the District of Oregon is in order. In that case, plaintiffs challenged the failure of the USFS to reinitiate consultation with NMFS on the LRMPs for the Wallowa–Whitman and Umatilla National Forests in Oregon after the listing of the Snake River chinook salmon.

The district court granted summary judgment in favor of the plaintiffs and ordered the USFS to prepare biological assessments on the LRMPs and reinitiate consultation with NMFS. *Pacific Rivers Council v. Thomas,* 30 F.3d at 1053. The district court then enjoined the USFS " 'from announcing, awarding, or conducting any additional timber sales, range activities/grazing permits, or road building projects pending compliance with ESA § 7.' " *Id.* The district court did not enjoin any ongoing or announced projects because plaintiffs had not persuaded the court that the USFS had improperly determined that these activities were not irreversible or irretrievable commitments of resources under § 7(d). *Id.*

On appeal, the Ninth Circuit affirmed the district court ruling that the LRMPs were continuing agency actions within the purview of § 7(a)(2) of the ESA; as well as the order directing the USFS to reinitiate consultation with NMFS under § 7(a)(2). *Id.* at 1056. However, the Ninth Circuit reversed the limited injunction imposed by the district court and remanded the case with the mandate to modify the injunction "to include the ongoing and announced timber, range and road projects." *Id.* at 1057. On remand, the district court enjoined nearly all ongoing activities on those national forests. *See* Opinion of Judge Malcolm F. Marsh entered October 20, 1994. (Attached to Plaintiffs' Notice of Supplemental Authority, filed October 26, 1994).

After careful review of the entire record in this matter, the court finds that plaintiffs have alleged significant violations of the ESA, and have made a sufficient showing of probable success on the merits. In addition, the potential harm to endangered species satisfies the requirement of showing irreparable injury. Therefore, the court concludes that plaintiffs' motion for injunctive relief should in large measure be granted.

An injunction is necessary to preserve the status quo and to afford the endangered species the level of protection clearly intended and indeed mandated under the ESA. The injunction shall remain in effect until all questions surrounding USFS compliance with the ESA have been resolved and/or until the USFS has fully complied with all statutory and regulatory provisions.

The court must now turn to the question of the proper scope of a preliminary injunction pending resolution of this action and/or completion of § 7(a)(2) consultation. Once consultation is initiated (or reinitiated) under § 7(a)(2), no action or commitment of resources may be undertaken in violation of § 7(d), 16 U.S.C. § 1536(d). Section 7(d) was enacted to prevent any irreversible or irretrievable commitment of resources to projects prior to completion of consultation, and thereby avoid situations similar to that presented to the United States Supreme Court in *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

In the instant action, the USFS contends that a blanket injunction against all ongoing timber harvest, grazing, mining, and road construction activities sought by plaintiffs is not warranted or justified, because consultation has been reinitiated.[4] The USFS argues that some ongoing projects may proceed under § 7(d) during consultation. Plaintiffs contend that no agency action may proceed until consultation on the LRMPs is completed.

In resolving this issue the court must first look to the specific language of § 7(d):

*After initiation of consultation* required under subsection (a)(2), the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2).

16 U.S.C. § 1536(d) (Law.Co-op.1984) (emphasis added).

Section § 7(d) by its own terms is activated upon initiation (or reinitiation) of consultation under § 7(a)(2). This proposition is made clear by the decision in *Pacific Rivers,* which held that "§ 7(d) does not serve as a basis for *any* governmental action unless and until consultation has been initiated." *Pacific Rivers Council v. Thomas,* 30 F.3d at 1056.

In *Conner v. Burford,* 848 F.2d 1441 (9th Cir.1988), the Ninth Circuit explained the role of § 7(d) as follows:

Section 7(d) does not amend section 7(a) to read that a comprehensive biological opinion is not required before the initiation of agency action so long as there is no irreversible or irretrievable commitment of resources ... Rather, section 7(d) clarifies the requirements of section 7(a), ensuring that the status quo will be maintained during the consultation process. Section 7(d) is not an independent authorization for "incremental-step" consultation.

*Id.* at 1455 n. 34.

■ With respect to plaintiffs' position in the present action, the decision of the Ninth Circuit in *Pacific Rivers,* in keeping with the plain language of the statute, clearly contemplates that some ongoing activities may continue pursuant to § 7(d) during the consultation period. Particular activities may proceed if the court finds that the activities do not involve irreversible or irretrievable commitments of resources which would foreclose the formulation and implementation of reasonable and prudent alternative measures. *Pacific Rivers Council v. Thomas,* 30 F.3d at

---

4. In the Oregon case, consultation had not been reinitiated when the district court entered its initial order or when the case was pending before the Ninth Circuit Court of Appeals.

1057. This result was implemented in the Oregon case which centered on the question of "whether ongoing or announced activities should proceed *during the consultation process.*" Opinion of Judge Malcolm F. Marsh entered October 20, 1994, at 3. (Attached to Plaintiffs' Notice of Supplemental Authority, filed October 26, 1994) (emphasis added).

With respect to the position of the USFS in this action, the Ninth Circuit declared that after initiation of consultation on the LRMPs, *"the court must decide* if the ongoing or announced activities can proceed during the consultation period." *Pacific Rivers Council v. Thomas,* 30 F.3d at 1057 (emphasis added). This declaration necessarily implies that pending judicial review, in the face of plaintiffs' challenge of ongoing activities under the ESA, most announced and ongoing activities must at least be preliminarily enjoined. On remand in the Oregon case, the district court spent a great deal of time and effort evaluating individual projects and categories of projects to determine whether they could proceed or whether they had to be enjoined pending completion of formal consultation on the LRMPs. *See* Opinion of Judge Malcolm F. Marsh entered October 20, 1994. (Attached to Plaintiffs' Notice of Supplemental Authority, filed October 26, 1994).

As noted above, plaintiffs move the court to enjoin all individual projects within the national forests pending completion of consultation on the LRMPs. At this stage of the proceedings, there is no detailed information on individual projects before the court. Nevertheless, based on the preceding discussion and the decision of the Ninth Circuit in *Pacific Rivers,* it is clear that the USFS must be enjoined from announcing, awarding, permitting, or conducting any *new* timber sales, range activities, mining activities, or road building projects until formal consultation on the LRMPs is completed.

Under the circumstances, the court is also compelled to enter an injunction against all ongoing and announced activities. Should the USFS wish to have certain ongoing and announced activities proceed pending completion of consultations, it must conduct § 7(d) evaluations on all such projects, either individually or in groups. Upon completion of this process, the court would expect the USFS to stipulate that all ongoing and announced activities identified as "likely to adversely affect" or "may adversely affect" endangered species of salmon shall be enjoined. Projects identified as "not likely to adversely affect" may be presented by motion or motions of the parties to this court for review to determine if they may proceed under § 7(d) pending completion of consultation under § 7(a)(2).

■ Finally, the court must address the contention of the Mining Group that LRMPs do not govern mining activities, and, therefore, mining activities cannot be enjoined pending completion of consultation on the LRMPs. LRMPs are mandated by the National Forest Management Act of 1976, 16 U.S.C. §§ 1600–1614. The statute is silent with respect to the specific role, if any, LRMPs shall play in the permitting process and ongoing conduct of mining operations within national forests. Rather, the act directs planning for effective management of recreation, range, timber, watershed, wildlife and fish, and wilderness resources. *See* 16 U.S.C. § 1604(e)(1).

The court has carefully reviewed the memoranda filed by members of the Mining Group, the memorandum in response filed by plaintiffs, and the cases cited therein. Based upon this review, the court acknowledges that case law and the statutes in question do not specifically state to what extent mining activities in national forests are governed or controlled by LRMPs. Nevertheless, the court concludes that mining activities are covered and shall also be enjoined pending completion of consultation on the LRMPs. The reasons for this conclusion are as follows.

First, each of the LRMPs at issue states that anadromous fish, habitat, and water resources are to be protected and enhanced. Accordingly, although the National Forest Management Act does not specifically mandate that mining activities be included in LRMPs, LRMPs would be meaningless with respect to effective fish, habitat, and water management if the effects of mining activities were not factored into the long-range plans. Second, upon review of the LRMPS at issue,

the court sees that mining activities are discussed in the plans, and terms and conditions on such activities, including mitigation measures, are provided for in the plans.

For example, the Record of Decision for the Boise National Forest Plan states that "[t]he Forest Plan provides for coordinated multiple-use management of outdoor recreation, range, timber, watershed, wildlife and fish, *minerals,* and wilderness resulting in sustained yields of goods and services for the benefit of the American people." Record of Decision for the Boise National Forest Plan, at R–3. (Attached as Exhibit A to the Declaration of Kristen L. Boyles in Support of Plaintiffs' Motion for Preliminary Injunction, filed August 19, 1994) (emphasis added). The "Standards" section of the Boise National Forest LRMP provides as follows:

**Minerals**

Provide for reestablishment of fish habitat in reclamation plans where habitat may be damaged by proposed mineral exploration or development activities. Require specific mitigation and reclamation measures to stabilize streambanks, to properly locate and construct settling ponds, and to reestablish riparian vegetation.

Land and Resource Management Plan for the Boise National Forest, at IV–21. (Attached as Exhibit B to the Declaration of Kristen L. Boyles in Support of Plaintiffs' Motion for Preliminary Injunction, filed August 19, 1994). Appendix A of the Boise National Forest LRMP sets forth a schedule of activities or projects designed to implement the plan in the first decade. A list of forest-wide mining activities is included in this appendix. *Id.* at A–5.

Other examples can be found in the Nez Perce National Forest LRMP. This plan includes mining projects in Table II–1, entitled Projected Outputs and Activities By Time Period. *See* Nez Perce National Forest Plan, at II–9. (Attached as Exhibit D to the Declaration of Kristen L. Boyles in Support of Plaintiffs' Motion for Preliminary Injunction, filed August 19, 1994). There is a separate "Standards" section for Minerals in the Nez Perce LRMP. Pertinent standards provide as follows:

**Minerals**

\*　　\*　　\*　　\*　　\*　　\*

3. Provide reasonable access to prospect, explore, develop, and produce mineral resources. Evaluate access needs based on requirements of mining operations and environmental factors. Applicable road construction specifications and standards shall be met.

4. Assist miners in developing operating plans that provide for environmental protection and ultimate rehabilitation, while allowing exploration, development, and production to proceed in a reasonable and timely manner.

\*　　\*　　\*　　\*　　\*　　\*

8. Complete additional site-specific analysis of environmental effects before recommendations are made on any lease application. Document this analysis in either the Environmental Impact Statement, Environmental Assessment, or Categorical Exclusion.

9. Apply a "no surface occupancy" stipulation to leases only when (a) surface occupancy would cause significant resource disturbance which cannot be mitigated by any other means; or (b) where resource impacts would be irreversible or irretrievable.

10. Areas withdrawn from mineral entry shall be reevaluated every 5 years to determine if the withdrawal is still necessary.

\*　　\*　　\*　　\*　　\*　　\*

12. Meet Forest fish/water quality objectives for all active mining operations.

*Id.* at II–23 to II–24. These standards clearly provide for USFS control over mining activities through the LRMP.

Finally, the property clause of the Constitution states that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Mining activities on land owned by the United States may be conducted pursuant to the Act of May 10, 1872, ch. 152, 17 Stat. 91 (codified

as amended within Title 30 of the United States Code) ("Mining Act"). Operating plans must be approved by the Forest Service for mining operations on national forests, pursuant to regulations implemented under the Act of June 4, 1897, ch. 2, 30 Stat. 11, 35 (codified as amended within Title 16 of the United States Code) ("Organic Act").

The Mining Act was adopted to encourage mining on federal lands. In 1970, the Congress revisited the Act and renewed its commitment to this basic policy, but for the first time stressed the need to lessen adverse environmental impacts from mining. *See* 30 U.S.C. § 21a. The Forest Service has adopted regulations to ensure that mining operations on national forests are "conducted so as to minimize adverse environmental impacts on National Forest System surface resources." 36 C.F.R. § 228.1 (1994). *See, generally,* 36 C.F.R. pt. 228 (1994).

Forest Service regulations require anyone intending to engage in mining operations to notify the Forest Service when such operations "might cause disturbance of surface resources." 36 C.F.R. § 228.4(a) (1994). In reviewing these regulations, the Ninth Circuit held that "[t]he initiation or continuation of such an operation is subject to the approval of the Forest Service." *U.S. v. Weiss,* 642 F.2d 296, 297 (9th Cir.1981). *See* 36 C.F.R. §§ 228.4–.5 (1994). In deciding whether a state or the Forest Service has authority to regulate mining to ensure compliance with environmental laws, the Ninth Circuit declared as follows: "We conclude that Forest Service regulations mandate that the power to prohibit the initiation or continuation of mining in national forests for failure to abide by applicable environmental requirements lies with the Forest Service." *Granite Rock Co. v. California Coastal Com'n,* 768 F.2d 1077, 1083 (9th Cir.1985).

Based on the established authority of the Forest Service over mining activities within national forests, the record compiled in this matter, and the substantive law reviewed by the court, the court concludes that mining activities in the six national forests shall also be enjoined pending completion of formal consultation on the LRMPs under § 7(a)(2) of the ESA. The court is persuaded that mining activities should be included in consultation on the LRMPs to ensure that the USFS and NMFS have a comprehensive view of all activities on the national forests and their impact on the endangered species of salmon. This is consistent with Congress's intent in enacting the Endangered Species Act. A comprehensive view may reveal the need to modify the LRMPs in order to preserve the endangered salmon.

In order to best serve and protect the interests of all parties, the court will promptly set this matter for a telephone status conference for the purpose of setting scheduling deadlines and discussing with all counsel the best means of bringing this matter to a fair and expeditious conclusion.

### III. ORDER

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that plaintiffs' motion for preliminary injunction, filed on August 19, 1994, should be, and is hereby, GRANTED as explained in detail above. This injunction may be modified during the course of this litigation to allow some ongoing and/or announced projects to proceed. Projects identified as "not likely to adversely affect" may be presented by motion or motions of the parties to the court for review to determine if they may proceed under § 7(d) pending completion of consultation on the Land and Resource Management Plans under § 7(a)(2) of the Endangered Species Act, 16 U.S.C. § 1536(a)(2).

IT IS FURTHER ORDERED that the USFS's motion for partial summary judgment, filed on September 13, 1994, should be, and is hereby, DENIED. Pursuant to this order, the court hereby DECLARES that the United States Forest Service was required to reinitiate consultation with the National Marine Fisheries Service under § 7(a)(2) of the Endangered Species Act, 16 U.S.C. § 1536(a)(2), on the effects of the Land and Resource Management Plans for the Boise, Challis, Nez Perce, Payette, Salmon, and Sawtooth National Forests in the State of Idaho on endangered Snake River

sockeye salmon and Snake River spring/summer and fall chinook salmon.